# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE NO. 1, JANE DOE NO. 2, and JANE DOE NO. 3, <br><br> Plaintiffs, <br><br> v. <br><br> BACKPAGE.COM, LLC, CARL FERRER, MICHAEL LACEY, and JAMES LARKIN, <br><br> Defendants. | Docket No. C.A. 17-cv-11069-LTS |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................................... ii

I. PLAINTIFFS' THEORY OF CONTENT CREATION MISUNDERSTANDS THE LAW AND MISAPPLIES PRECEDENT ............................................................. 1

II. PLAINTIFF'S TVPRA AND MATA VIOLATIONS CANNOT REST ON DIRECT PARTICIPATION IN TRAFFICKING NOT ALLEGED IN THE COMPLAINT, AND THE CHAPTER 93A CLAIM LIKEWISE DOES NOT STATE A CLAIM ................................................................................................. 6

CONCLUSION ..................................................................................................................................... 7

# TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apache Tribe of Okla. v. Brown*,
 966 F. Supp. 2d 1188 (W.D. Okla. 2013) ................................................................................7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...............................................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................................7

*Chicago Lawyers' Comm. for Civil Rights Under the Law v. Craigslist, Inc.*,
 519 F.3d 666 (7th Cir. 2008) .....................................................................................................6

*Commonwealth v. McGhee*,
 35 N.E.2d 329 (Mass. 2015) ......................................................................................................6

*Cunha v. LVNV Funding, LLC*,
 2015 WL 5737134 (D. Mass. Sept. 30, 2015) ..........................................................................6

*Doe No. 1 v. Backpage.com, LLC*,
 104 F. Supp. 3d 149 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016),
 *cert. denied*, 137 S. Ct. 622 (2017) ................................................................................ passim

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
 521 F.3d 1157 (9th Cir. 2008) ..........................................................................................2, 3, 5

*Florida Abolitionist v. Backpage.com, LLC*,
 No. 6:17-cv-00218-JA-TBS, ECF No. 72 (M.D. Fla. Aug. 11, 2017) ......................................4

*FTC v. Accusearch, Inc.*,
 570 F.3d 1187 (10th Cir. 2009) .............................................................................................2, 3

*FTC v. LeadClick Media, LLC*,
 838 F.3d 158 (2d Cir. 2016).......................................................................................................3

*Goddard v. Google, Inc.*,
 640 F. Supp. 2d 1193 (N.D. Cal. 2009) ....................................................................................2

*Home Orthopedics, Inc. v. Rodriguez*,
 2012 WL 12533035 (D.P.R. Sept. 30, 20 12) ...........................................................................7

*Huon v. Denton*,
 841 F.3d 733 (7th Cir. 2016) .....................................................................................................2

*J.S. v. Village Voice Media Holdings, LLC*,
   No. 12-2-11362-4 (Wash. Sup. Ct. May 26, 2017)..................................................................4

*Mullins v. Pine Manor Coll.*,
   449 N.E.2d 311 (Mass. 1983) ..................................................................................................7

*Negusie v. Holder*,
   555 U.S. 511 (2009)..................................................................................................................6

*New England Data Services, Inc. v. Becher*,
   829 F.2d 286 (1st Cir. 1987)....................................................................................................7

*People v. Ferrer*,
   No. 16FE024013 (Cal. Sup. Ct. Aug. 23, 2017) ....................................................................4

*People v. Ferrer*,
   2016 WL 7237305 (Sup. Ct. Sacramento Cty. Dec. 9, 2016)...................................................4

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)..................................................................................................................6

*Russello v. United States*,
   464 U.S. 16 (1983)....................................................................................................................6

*S.C. v. Dirty World, LLC*,
   2012 WL 3335284 (W.D. Mo. Mar. 12, 2012).......................................................................2

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
   199 F. Supp. 3d 125 (D.D.C. 2016), *vacated as moot*,
   856 F.3d 1080 (D.C. Cir. 2017) ...............................................................................................4

*Smith v. Jenkins*,
   732 F.3d 51 (1st Cir. 2013)......................................................................................................7

*Spear v. Fenkell*,
   2016 WL 5661720 (E.D. Pa. Sept. 30, 2016) .........................................................................4

*Stasiukevich v. Nicholls*,
   168 F.2d 474 (1st Cir. 1948)....................................................................................................1

*Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*,
   524 F.3d 315 (1st Cir. 2008)....................................................................................................1

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
   478 F.3d 413 (1st Cir. 2007)....................................................................................................5

**Federal Statutes**

18 U.S.C. §§ 1591, *et seq.* (Trafficking Victims Protection
    Reauthorization Act of 2008) ......................................................................................... 6-7

47 U.S.C.
    § 230 ............................................................................................................................. 1, 2, 4, 5
    § 230(c)(1) ........................................................................................................................ 2, 5
    § 230(f)(3) ............................................................................................................................. 2

**State Statutes**

Mass. G.L. c.
    265 §§ 49-56 ..................................................................................................................... 6-7
    93A, § 2(s) ............................................................................................................................ 7

**Rules**

Federal Rules of Civil Procedure
    9 ............................................................................................................................................ 7
    10 .......................................................................................................................................... 1
    12(b)(6) ....................................................................................................................... 1, 4, 5

Plaintiffs' insistence that this case is not a "do-over" of *Doe No. 1 v. Backpage.com LLC*, 104 F. Supp. 3d 149 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017), is correct only in the sense that this case isn't really about the Plaintiffs at all. The Opposition contains almost no mention of Plaintiffs or the ads about them that are the bases for the claims, just as the Complaint itself contains scant reference to the ads. In 30 pages, Plaintiffs devote but a single paragraph to the ads, Opp. 8-9, do not deny they were written and posted by pimps and others who victimized them, nor assert Backpage provided any content or editorial changes that made the ads illegal. Rather than cite to any well-pleaded facts, the Opposition repeats Plaintiffs' near total reliance on the January 2017 Report of the Senate Permanent Subcommittee on Investigations ("PSI Report"), and its accusations about Backpage.com. But even if the Report's allegations could be accepted as true and incorporated into the Complaint,[1] it contains no claims Backpage did anything other than host content provided by others and it says absolutely nothing about Plaintiffs' ads. In this regard, the law is clear that Section 230 immunity cannot be avoided based on accusations that a website's operations, rules, or review and editing of third-party content supposedly is designed to induce or facilitate unlawful content.

I. **PLAINTIFFS' THEORY OF CONTENT CREATION MISUNDERSTANDS THE LAW AND MISAPPLIES PRECEDENT**

Plaintiffs try to evade Section 230 immunity by mischaracterizing Backpage's arguments, misconstruing the statute, and ignoring the well-established body of law applying it. They manufacture what they call an "independent 'content creation or development' prong" of Section 230,

---

[1] Plaintiffs claim the PSI Report may be incorporated into the Complaint and "properly considered part of the pleading for all purposes." Opp. 6 n.2. Plaintiffs rely on *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008), but the complaint in that case incorporated Caterpillar's warranty, which was "the basis of [Trans-Spec's] claims," *id.* at 320, and this does not speak to the Rule 10 point. *See* Mot. 25-27. Plaintiffs urge that legislative committee reports may be admissible in evidence, Opp. 6 n.2 (quoting *Stasiukevich v. Nicholls*, 168 F.2d 474, 479 (1st Cir. 1948)), but that is not true in all instances, *Stasiukevich*, 168 F.2d at 479-80, and, in any event, this does not permit a party to defeat Rule 12 dismissal by attaching reports of others' accusations.

Opp. 2, which in reality is nothing more than one part of the statute's definitions section. 47 U.S.C. § 230(f)(3). The Motion to Dismiss fully analyzed Section 230 along with its definition of content creation,[2] and Plaintiffs fail to cite a single case to support their conclusion that banning certain words or images from a website constitutes content "creation" or "development," while ignoring a body of law that holds the opposite.

Plaintiffs repeatedly quote the language of Section 230(f)(3) defining a content provider as an entity "responsible, in whole or in part, for the creation or development of information provided through the Internet," *see* Opp. 2, 3, 4, 10, 12, 23, but no amount of repetition (or overuse of boldface or italics) can convert acts of editing—which Section 230(c)(1) expressly immunizes—into acts of content-creation. Of the few cases they bother to cite, Plaintiffs quote only sentence fragments while ignoring actual holdings. Far from supporting Plaintiffs' novel theory of content "development" through editing, the cited cases found plausible allegations of content creation or development *only* where the website (1) <u>requires</u> posting illegal or tortious content as a condition of using the service;[3] (2) has employees who create and post such content;[4] or

---

[2] While claiming to argue from "the weight of authority," Opp. 20, Plaintiffs fail to address the vast body of decisions holding that: (1) a website cannot be held liable based on its overall structure, design, or operation, Mot. 13-16; (2) immunity cannot be evaded by arguing with website has knowledge of or "facilitates" unlawful content, *id*. 17-19; (3) liability turns on who created and developed the specific content that allegedly caused Plaintiffs' harm, *id*. 20-21; and (4) a website's efforts to review, screen, block, or edit third party postings do not constitute "content creation or development" and are immune under Section 230. *Id*. 19-25.

[3] *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1170-71, 1175 (9th Cir. 2008) (*en banc*) (Section 230 immunity might be lost only if website "require[s] users to input illegal content"). *See also Doe No. 1*, 104 F. Supp. 3d at 156 (applying *Roommates.com* and holding that "website would be immune, so long as it does not **require** the use of discriminatory criteria") (emphasis in original); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1198 (N.D. Cal. 2009) (*Roommates.com* "turned entirely on the website's decision to *force* subscribers to divulge the protected characteristics and discriminatory preferences 'as a condition of using its services'") (emphasis in original); *S.C. v. Dirty World, LLC*, 2012 WL 3335284, at *3 (W.D. Mo. Mar. 12, 2012) (reading *Roommates.com* and *FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009), to mean immunity is lost only if the provider "require[s] the posting of actionable material [or] pay[s] for such information").

[4] *Accusearch Inc.*, 570 F.3d at 1199-1200 (Accusearch sold private telephone records and hired researchers to obtain them, which required violating or circumventing the Telecommunications Act); *Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016) (Huon "plausibly alleged [] Gawker employees created the defamatory comments[.]").

2

(3) engages others to do so.[5]   Here, of course, Plaintiffs allege the opposite—that their traffickers

paid Backpage to place ads online, and supplied all the content that led to their abuse.[6]

But Plaintiffs' misleading citations do not end there.  While arguing that rules prohibiting

the posting of certain terms may constitute "content creation or development," they studiously

avoid citing those parts of the holdings they discuss that contradict their theory.[7]  Lacking any

supporting authority, Plaintiffs assert that "any English speaker knows [that] changes in meaning

can come from either additions or deletions," and distort the one bit of *dictum* they cite to bolster

this argument.  Opp. 19 (citing *Roommates.com* for the proposition that "content creation can

include 'removing the word "not" from a user's message' so as to transform the [its] meaning").

This selective citation to *Roommates.com* involves a hypothetical in which a word is removed to

*create* a defamatory statement where there was none before.  *See Roommates.com*, 521 F.3d at

1169 ("removing the word 'not' from a user's message reading '[Name] did not steal the

artwork' in order to transform an innocent message into a libelous one").[8]

But that is not what is argued here.  Plaintiffs claim third parties submitted ad copy that

already proposed illegal transactions, but posit that Backpage edited the ads to mask their more

egregious parts, making them something different.  *See* Opp. 19.  Plaintiffs offer nothing to sup-

port this assertion.  Their claim that the "transformed messages," while "still potentially illegal,"

would be less likely to "draw police scrutiny," is nothing but pure speculation—the type of asser-

---

[5]   *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 171-72 (2d Cir. 2016) (LeadClick recruited and paid affiliates, managed their operations, and made substantive changes to fake news sites as part of a deceptive ad scheme).

[6]   Compl. ¶¶ 15-16, 62-64, 68-73, 76-80.  *Compare Doe No. 1*, 817 F.3d at 19 ("appellants acknowledge in their complaint that the contents of all of the relevant ad[s] were provided either by their traffickers or by the appellants themselves").

[7]   *See*, *e.g*., *Roommates.com*, 521 F.3d at 1170-71 ("any activity that can be boiled down to deciding whether to exclude material that third parties seek to post [] is perforce immune"); *Accusearch*, 570 F.3d at 1198-99 (website can be liable only to the extent it created or developed "specific content that was the source of the alleged liability").

[8]   Accordingly, Plaintiffs' proposed hypothetical involving an ad to sell a "broken Mercedes" is inapt, as the ad copy as submitted is entirely legal.  Opp. 18.

tion the First Circuit described as "more cry than wool." *Doe No. 1*, 817 F.3d at 20. *See also id*. at 25 (describing assertions about effect of Backpage's policies on law enforcement as "forged entirely out of surmise" that "need not be credited at the Rule 12(b)(6) stage") (citation omitted). For example, Plaintiffs cannot explain how an alleged edit deleting "Latina Shorty" and placing it with "Exotic Latina" supports their theory. *See* Compl. ¶ 64. As numerous courts have held, liability depends on who supplied the specific content that makes the posting illegal. Mot. 20-21.

Reduced to its core, Plaintiffs' argument that Backpage "creates" or "develops" content via "masking" or "sanitizing" have been rejected by numerous courts, including this one.[9] Essentially, Plaintiffs argue Backpage would face no liability at all if it encouraged and allowed ads exactly as submitted by Plaintiffs' abusers, but that Backpage is liable here because it enforced terms of service to exclude objectionable words. This allegation says nothing to suggest Backpage in any way contributed to any illegality, and the claim is entirely foreclosed by this Court's and the First Circuit's opinions in *Doe No. 1*. In affirming dismissal of all claims, the First Circuit echoed the consensus view that "the choice of what words or phrases can be

---

[9] *See* Mot. 12-13, 19-25 (discussing cases). Plaintiffs try to downplay rulings for Backpage under Section 230 by this and other courts, claiming recent "legal setbacks" undermine their applicability, Opp. 22-24, but their selective references flirt with sanctionable omission. Plaintiffs argue Backpage was "rebuffed by the courts" regarding production of documents to PSI, but cite a case that was vacated after PSI mooted appellate review of Backpage's First Amendment objections. *See id*. 23 (citing *PSI v. Ferrer*, 199 F. Supp. 3d 125 (D.D.C. 2016), *vacated as moot*, 856 F.3d 1080 (D.C. Cir. 2017)). Plaintiffs fail to mention this subsequent history or the fact the case had nothing to do with Section 230. Plaintiffs note the denial of summary judgment in *J.S. v. Village Voice Media Holdings, LLC*, No. 12-2-11362-4 (Wash. Sup. Ct. May 26, 2017), *id*. 23-24, but omit that the two-page form order contains no analysis, let alone compelling reasons to question black-letter principles routinely applied in Backpage cases. They also cite a magistrate ruling for discovery to commence in a case where, as here, Backpage moved to dismiss based on Section 230, *id*. 24 (citing *Fla. Abolitionist v. Backpage.com, LLC*, No. 6:17-cv-00218-JA-TBS, ECF No. 72 (M.D. Fla. Aug. 11, 2017)), while failing to mention the district court judge withdrew the scheduling order at Backpage's request when it filed objections to the magistrate's ruling. *See id*. ECF 73-78. And Plaintiffs tout a California state criminal ruling allowing money laundering charges to proceed against the individual Defendants here, Opp. 22 (citing *People v. Ferrer*, No. 16FE024013 (Cal. Sup. Ct. Aug. 23, 2017)), while downplaying that the "pimping" charges in that case, based on the same claims Plaintiffs' make here, were dismissed under Section 230—the second time that outcome occurred, even with the benefit of the PSI Report. As to that holding, Plaintiffs can only "strenuously object" the judge erred. *Id*. 23. *See also People v. Ferrer*, 2016 WL 7237305 (Sup. Ct. Sac. Cty. Dec. 9, 2016); *cf. Spear v. Fenkell*, 2016 WL 5661720, at *20 n.21 (E.D. Pa. Sept. 30, 2016) (citing A FEW GOOD MEN (Columbia Pictures 1992)).

4

displayed on the site [] are traditional publisher functions under any coherent definition of the term," and that Section 230 bars liability predicated on "posting standards for advertisements," including "rules about which terms are permitted or not permitted in a posting" or "the website's reaction after a forbidden term is entered." 817 F.3d at 20.

In *Doe No. 1*, as here, the "well-pleaded claims address[ed] the structure and operation of the Backpage website, that is, Backpage's decisions about how to treat postings," and Plaintiffs merely asserted—just as they do here—that Backpage implemented those rules to facilitate sex trafficking. But the First Circuit rejected this rationale, holding that "[w]hatever Backpage's motivations, th[ey] do not alter the fact that the complaint premises liability on the decisions that Backpage is making as a publisher with respect to third-party content." *Id*. at 21. Plaintiffs try to avoid this holding by claiming *Doe No. 1* "addressed only the publisher prong of the statute," Opp. 12 n.7, but this creative reading will not wash. At the district court, various *amici* argued not just that editorial policies made Backpage a content-creator, but that its employees posted "illegal materials in sponsored ads."[10] The First Circuit found it unnecessary to address *amici*'s factual assertions, and held that "claims that a website facilitates illegal conduct through its posting rules necessarily treat the website as a publisher or speaker of content provided by third parties and, thus, are precluded by section 230(c)(1)." *Doe No. 1*, 817 F.3d at 22. As the First Circuit explained in *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007), "Congress intended that [websites] would not be held responsible for [] postings made by others [and] [n]o amount of artful pleading can avoid that result."

---

[10] *Doe No. 1*, 104 F. Supp. 3d at 156. Judge Stearns thoroughly analyzed these claims and flatly rejected the plaintiffs' interpretation of *Roommates.com*, finding that "[s]ingly or in the aggregate, the allegedly sordid practices of Backpage identified by *amici* amount to neither affirmative participation in an illegal venture nor active web content creation." *Id*. at 156-57. Plaintiffs brush off this two-page discussion as "brief" and "*dicta*," and assert his analysis "did not benefit from any of the public developments of the past three years." Opp. 12 n.7. But this is irrelevant. The allegations made then are identical to the ones made here, and, for purposes of a Rule 12(b)(6) motion they were taken as true, leaving nothing in subsequent "public developments" to burnish them.

5

II. **PLAINTIFF'S TVPRA AND MATA VIOLATIONS CANNOT REST ON DIRECT PARTICIPATION IN TRAFFICKING NOT ALLEGED IN THE COMPLAINT, AND THE CHAPTER 93A CLAIM LIKEWISE DOES NOT STATE A CLAIM**

Plaintiffs fail to establish that they allege viable causes of action. Defendants' Motion showed that the Complaint alleges no facts of their knowing *mens rea* as to the specific Doe Plaintiffs, their ages, or what made their ads unlawful, all of which the TVPRA requires for "advertising" violations.[11] In response, Plaintiffs all but concede they do not allege knowledge—insisting instead that only reckless disregard is needed, because it is claimed Backpage "'transported,' 'provided,' 'obtained,' 'maintained,' 'patronized,' and/or solicited children" who were trafficked (not Doe Plaintiffs, but children generally).[12] Yet no facts are alleged that Defendants did anything but maintain and moderate a website where third parties posted ads, and were paid the same way, in the same amounts, as for any other ad.[13] Beyond this supposed "financial benefit," *see supra* note 13; Compl. ¶¶ 84-85, 89-90, the Complaint's counts allege only "conduct *by traffickers*," Compl. ¶ 89, that Defendants supposedly "furthered" via the website. Compl. ¶ 84. *Cf. Chicago Lawyers' Comm. for Civil Rights Under the Law v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) ("no one could post … if craigslist did not offer a forum

---

[11] Mot. 27-28 (citing *Doe No. 1*, 104 F. Supp. 3d at 154 (quoting *Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs admit this standard applies, Opp. 26-27, while ignoring MATA's lack of an "advertising" violation. *See* Mot. 28.

[12] Opp. 25, 26. It is simply incorrect that "Defendants do not … contest [] they 'knowingly … benefitted financially' from 'participation' in" trafficking. Opp. 25. *See* Mot. 27-28; *see also infra* note 13 and accompanying text. And while Plaintiffs argue "criminal 'participation' has been construed broadly by the Supreme Court," *see* Opp. 25 n.16 (quoting *Russello v. United States*, 464 U.S. 16, 21-22 (1983); *Negusie v. Holder*, 555 U.S. 511, 544 (2009) (Thomas, J., dissenting)), they offer as support only a dissenting opinion they neglect to identify as such, and *dicta* in a case under RICO, where "participation" has specialized meaning. *See Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993) (discussing *Russello*); *cf. Russello*, 464 U.S. at 20 ("The sole issue in this case is whether profits and proceeds derived from racketeering constitute an 'interest' within the meaning of this statute ….").

[13] This was the only "financial benefit" to Backpage. *Compare* Opp. 25-26. Plaintiffs cite *Cunha v. LVNV Funding, LLC*, to argue they need not "identify a specific subsection" of the TVPRA. Opp. 27 & n.18 (citing 2015 WL 5737134, at *2 (D. Mass. Sept. 30, 2015)). But even *Cunha* requires *factual* allegations that put defendants on notice what statutory provision is invoked, *see Cunha* at *3, which is of substantive significance here given the different *mens rea* requirements that apply depending what conduct criminalized by the law is alleged—as Plaintiffs expressly admit. *See* Opp. 26. As noted in the text, Plaintiffs backpedal furiously with regard to the knowledge standard that must apply to criminalization of any expressive activity, *see also* Mot. 28, on which point Plaintiffs simply misread *Commonwealth v. McGhee*, 35 N.E.3d 329 (Mass. 2015). Opp. 28 n.20. *Compare* Mot. 28.

[but t]hat is not … a useful definition of cause"). Plaintiffs' only other response to being called on offering bare assertions of Defendants' supposed knowledge on these necessary points, *see* Mot. 27-28, is to quote parts of the Complaint that allege Backpage's practices *generally*. Opp. 27-28 (citing Compl. ¶¶ 18, 25-26, 34). Nothing is offered *specific* to the Plaintiffs.[14] *See Doe No. 1*, 817 F.3d at 21 (direct involvement in venture required to assert a TVPRA claim).

Plaintiffs attempt to overcome their Chapter 93A claim's causation failings by arguing "Defendants must have anticipated [] Plaintiffs would be harmed," citing *Mullins v. Pine Manor Coll.*, 449 N.E.2d 311 (Mass. 1983), on foreseeability. Opp. 29-30. But *Mullins*' holding was as much about a college's assumption of responsibility to keep resident students safe—including those (like Mullins) required to live on-campus and, given that limited tenancy, lacking ability and incentive to fortify physical security measures the school employed—as it was about foreseeability. *See* 449 N.E.2d at 355-37. There is no allegation here of any assumption of responsibility by Defendants to Plaintiffs, nor could there be. Meanwhile, as to the effect of acts of the "indeterminate number of third parties" the First Circuit found undermined causation in *Doe No. 1*—as are equally present here—Mot. 29 (citing 817 F.3d at 25), Plaintiffs have no answer.[15]

## CONCLUSION

For the foregoing reasons, and those stated in Defendants' Motion to Dismiss, this Court must dismiss the Complaint in its entirety.

---

[14] Plaintiffs suggest their failure to adequately plead knowledge under the TVPRA and MATA should not be subjected to the "draconian result of dismissal" under *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 290-91 (1st Cir. 1987), Opp. 27. But *Becher* speaks to satisfying Rule 9 in alleging RICO predicate acts, not general rules of pleading leniency, and it is unclear whether even that limited degree of latitude survived *Twombly* and *Iqbal*. *See Home Orthopedics, Inc. v. Rodriguez*, 2012 WL 12533035, at *9 n.8 (D.P.R. Sept. 30, 2012); *cf. Apache Tribe of Okla. v. Brown*, 966 F. Supp. 2d 1188, 1197 (W.D. Okla. 2013).

[15] The claim that Backpage's deletion of material from Doe ads led to a "chain of causation [that] resulted in injuries-in-fact that were reasonably foreseeable," fare no better as a legal matter. Opp. 29. Plaintiffs cite *Smith v. Jenkins*, 732 F.3d 51, 71 (1st Cir. 2013), but in that case the court held the plaintiff's causal-connection showing was fatally flawed "speculation," and vacated the judgment based on it. *Id*. 71-72. *See also Doe No. 1*, 817 F.3d at 25 (rejecting argument that "pyramids speculative inference upon speculative inference").

7

Respectfully submitted,

BACKPAGE.COM, LLC, CARL FERRER, MICHAEL LACEY, and JAMES LARKIN

By their attorneys,

*/s/ Robert Corn-Revere*
Robert Corn-Revere (*pro hac vice*)
*bobcornrevere@dwt.com*
Ronald G. London (*pro hac vice*)
*ronnielondon@dwt.com*
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, D.C. 20006
Tel: (202) 973-4225

James C. Grant (*pro hac vice*)
*jimgrant@dwt.com*
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 622-3150

Robert A. Bertsche (BBO #554333)
*rbertsche@princelobel.com*
Jeffrey J. Pyle (BBO #647438)
*jpyle@princelobel.com*
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, Massachusetts 02110
Tel: (617) 456-8018

Dated: October 6, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

*/s/ Robert Corn-Revere*
Robert Corn-Revere