UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                            )
Jane Doe No. 1, Jane Doe No. 2, and          )
Jane Doe No. 3                                            )
                        Plaintiffs,                           )
                                                            )
v.                                                              )            Civil Action No. 17-11069-LTS
                                                            )
Backpage.com, LLC, Carl Ferrer,               )
Michael Lacey and James Larkin              )
                        Defendants,                       )
_____)


ORDER ON MOTION TO DISMISS

March 29, 2018

SOROKIN, J.

I.        INTRODUCTION

        In March of 2016, the First Circuit affirmed Judge Stearns' decision to dismiss claims

brought by three Jane Does against Backpage.com, LLC, ("Backpage") alleging violations of

the: Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595;

Massachusetts Anti–Human Trafficking and Victim Protection Act of 2010 ("MATA"), Mass.

Gen. Laws ch. 265, § 50; Massachusetts Consumer Protection Act ("MCPA"), Mass. Gen. Laws

ch. 93A, § 9, and each individual Doe's intellectual property rights. Doe v. Backpage.com, LLC,

817 F.3d 12 (1st Cir. 2016), cert. denied, 137 S. Ct. 622 (2017) ("Doe No. 1"). The Circuit found

Backpage's activities "meretricious," id. at 29, and that the plaintiffs' "circumstances evoke[d]

outrage." Id. at 16. Even so, it found that the Communications Decency Act of 1996 ("CDA"),

47 U.S.C., which commands, "No provider or user of an interactive computer service shall be

treated as the publisher or speaker of any information provided by another information content

1

provider," id. at § 230(c)(1), protected Backpage from the suit. Doe No. 1, 817 F.3d at 22. In particular, the Circuit ruled that "[Backpage's] rules about which terms are permitted or not permitted in a posting, the lack of controls on the display of phone numbers, the option to anonymize e-mail addresses, the stripping of metadata from photographs uploaded to the website, the website's reaction after a forbidden term is entered into an advertisement, and Backpage's acceptance of anonymous payments" are traditional editorial functions. Doe No. 1, 817 F.3d at 20. The Court further held that, "[w]hatever Backpage's motivations," its editorial behavior was protected because the alleged harmful content was "created by others." Id. at 21. Now, three different Jane Does, represented by the same pro bono counsel, have filed a new lawsuit against Backpage.com, LLC., and its CEO and owners (collectively, "Backpage") asserting a subset of the claims advanced in Doe No. 1.[1] Doc. No. 1. Backpage has filed a motion to dismiss in this Court, arguing that this is a "do-over" suit which the Court should dismiss under the authority of Doe No. 1 and the CDA. Doc. No. 31, 32 at 11-27.

II.    ANALYSIS

With respect to the advertisement of Jane Doe No. 3, Plaintiffs allege "on information and belief, Backpage . . . redrafted the advertisement to suggest Jane Doe No. 3 was an adult." Doc. No. 1 at ¶ 78. This allegation is distinct from their allegations with respect to Jane Doe Nos. 1 and 2; this allegation as to Jane Doe No. 3, unlike the allegations as to Jane Doe Nos. 1 or 2, plausibly describes Backpage as creating content.  Given the basis for the allegation, "on information and belief,"[2] and the breadth of the statutory immunity, the Court permitted limited

---

[1] Defendants in this action are Backpage.com, LLC; CEO of Backpage, LLC, Carl Ferrer; and Backpage, LLC, owners, Michael Lacey, and James Larkin. Hereinafter, Defendants are collectively referred to as "Backpage."

[2] "Upon information and belief" means "based on secondhand information that [the asserting party] believes to be true." Menard v. CSX Transp., Inc., 698 F.3d 40, 44 n.5 (1st Cir. 2012)

discovery regarding Jane Doe No. 3, Doc. No. 44, which the parties have now completed, Doc.

No. 53.  The discovery does reveal one ad advertising Jane Doe No. 3 which was changed

between submission and publication. Doc. No. 53 at 7. In response, Backpage argues, based on

attorney proffers or representations, that a user rather than either Backpage employees or

Backpage's system made any change in this ad. Id. at 12. That, however, is a fact issue for

resolution at summary judgment or trial.[3]  The allegation in the complaint that "Backpage . . .

redrafted the advertisement [of Jane Doe No. 3] to suggest she was an adult" suffices to allow the

complaint by Jane Doe No. 3 to proceed in the face of the CDA's statutory immunity, which

does not protect service providers when they create content, FTC v. Accusearch, Inc., 570 F.3d

1187, 1197 (10th Cir. 2009).  The further discovery, while not clarifying greatly the matter,

provides, drawing all reasonable inferences in Plaintiff's favor, a modicum of support for the

notion that Backpage has substantively changed an ad, which then supports the information and

belief allegation in the complaint.  Thus, the CDA poses no bar to Jane Doe No. 3's claim at this

stage of the proceedings.  To the extent that Defendants argue Jane Doe No. 3's claims fail more

generally under Rule 12(b)(6), that argument is denied without prejudice to renewal on a motion

for summary judgment after discovery.

Jane Doe Nos. 1 and 2, legally, are in a different position.  The Complaint is devoid of

factual allegations plausibly supporting the contention that Backpage created content, expressly

---

(quoting Black's Law Dictionary 783 (7th ed. 1999)); Cf. Menard, 698 F.3d at 44-46  (finding
that, where allegations are based on "information and belief" and "modest discovery may
provide the missing link," "the district court has discretion to allow limited discovery[.]").
[3] While Backpage presents a facially plausible explanation, the explanation is neither presented
in the form of an affidavit based upon personal knowledge nor does it comprehensively describe
the system Backpage employs for making or tracking changes.  In these circumstances, contrary
to Backpage's contention, Backpage's proffered explanation does not preclude Plaintiff's
counsel from looking to the changed ad as supporting its theory set out in the complaint that
Backpage has made substantive changes that added content to ads involving Jane Doe No 3.

or impliedly, as to either of these two plaintiffs.  Thus, the CDA bars their claims. <u>See</u> <u>Doe No.</u>
<u>1</u>, 817 F.3d at 18.

The Court notes three further points. First, Plaintiffs allege Backpage revised one
advertisement regarding Jane Doe No. 1 by not only deleting words but also by adding a word.
Doc. No. 1 at ¶ 64.  The advertisement initially included the language "Latina shorty,"[4] which
was later replaced by the words "Exotic Latina." <u>Id.</u> Backpage's alleged alteration of the
advertisement of Jane Doe is not enough to transform Backpage from an internet service
provider to the creator, even in part, of this advertisement's content. "Shorty", per the Complaint,
signaled, in slang, a young girl. <u>Id.</u> The deletion of this word did not create content. Backpage
added the word "exotic."  The Complaint does not allege that the word exotic carries any special
or slang meaning.  Ordinarily, the word means from a foreign or distant land.[5]   In the
circumstances of this advertisement as described in the complaint, the addition of the word
exotic is in the nature of editorial change rather than content creation, as its addition does not
substantively alter the meaning of the already provided identifier "Latina."  Second, Backpage's
counsel argued vehemently and repeatedly at the motion hearing that the Court should disregard
the allegations of paragraph 35 of the Complaint because these allegations are not true as
established in light of factual submissions made with Backpage's opposition. The Court rejects
this argument. The Federal Rules of Civil Procedure and the governing law handed down by the

---

[4] "Shorty is a slang term that can signify a young girl." Doc. No. 1 at par. 64.

[5] <u>See</u> *Exotic*, <u>Oxford Living English Dictionary</u>,
https://en.oxforddictionaries.com/definition/exotic (last visited Jan. 11, 2018) ("originating in or
characteristic of a distant foreign country"); *Exotic*, <u>Cambridge Dictionary</u>,
https://dictionary.cambridge.org/us/dictionary/english/exotic (last visited Jan. 11, 2018)
("unusual . . . because of coming from a country that is far away"); *Exotic*, <u>Dictionary.com</u>,
http://www.dictionary.com/browse/exotic (last visited Jan. 11, 2018) (of foreign origin or
character; not native; introduced from abroad . . .").

Supreme Court and the First Circuit require that the factual allegations of a complaint be "taken as true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007); Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007).  While paragraph 35 does not describe an ad about any of the Plaintiffs, it is an allegation the Court can and does consider regarding Backpage's process for reviewing, changing and publishing ads.

Finally, crediting the truthfulness of the Plaintiffs' allegations, as the law instructs, the Complaint describes unimaginable sexual abuse, repeatedly endured by each Plaintiff, Doc. No. 1 at ¶¶ 61-63, 67-69, 74-76.  Nothing about the Court's ruling as to Jane No. 1 or No. 2 diminishes the harm suffered by each of these woman. The ruling addresses only the applicable civil law. 47 U.S.C. § 230(e)(1) (creating immunity from civil and state criminal law, but not federal criminal law).

III.   CONCLUSION

Accordingly, applying the familiar standard governing Rule 12(b)(6) motions, the Motion to Dismiss (Doc. No. 31) is ALLOWED IN PART AND DENIED IN PART.  Defendants shall file their answers within fourteen days.  The Clerk shall schedule a Rule 16 conference.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge