**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JANE DOE NO. 1, JANE DOE NO. 2, and JANE DOE NO. 3,

Plaintiffs,

v.

BACKPAGE.COM, LLC, CARL FERRER, MICHAEL LACEY, and JAMES LARKIN,

Defendants.

Docket No. 1:17-cv-11069-LTS

**PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL LACEY AND JAMES LARKIN'S MOTION TO STAY PROCEEDINGS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. A Stay Against Defendants Backpage and Ferrer Is Not Required Under Section 1595(b) of the TVPRA. ..... 2

II. The Balance of the Equities Favors Allowing Plaintiffs to Proceed Against Defendants Backpage and Ferrer. ..... 5

A. A Stay Would Prejudice Plaintiffs' Interests. ..... 6

B. Defendants Lacey and Larkin Will Not Suffer Hardship from Discovery Against Defendants Backpage and Ferrer. ..... 7

C. The Status of the Cases Favors Proceeding with This Matter. ..... 8

D. Defendants' Lack of Good Faith and the Interests of the Courts, Third Parties, and the Public Favor Proceeding. ..... 9

E. The Relevant Criminal Proceeding Involves Different Claims. ..... 11

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amato v. United States*,
450 F.3d 46 (1st Cir. 2006) .......... 7

*Ara v. Khan*,
No. CV 07-1251 (ARR)(JO), 2007 WL 1726456 (E.D.N.Y. June 14, 2007) .......... 4

*Arden Way Assoc. v. Boesky*,
600 F. Supp. 1494 (S.D.N.Y. 1987) .......... 8

*Austin v. Unarco Indus., Inc.*,
705 F.2d 1 (1st Cir. 1983) .......... 5, 6, 9

*Boston Heart Diagnostics Corp. v. Health Diagnostics Lab., Inc.*,
Civ. No. 13-13111-FDS, 2014 WL 2048436 (D. Mass. May 16, 2014) .......... 10

*Digital Equip. Corp. v. Currie Enters.*,
142 F.R.D. 8 (D. Mass. 1991) .......... 5, 6, 10

*Green v. Cosby*,
177 F. Supp. 3d 673 (D. Mass. 2016) .......... 5, 6, 11

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
No. 4:10-CV-04124, 2011 WL 5188424 (W.D. Ark. Oct. 31, 2011) .......... 4

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
385 F.3d 72 (1st Cir. 2004) .......... *passim*

*S.E.C. v. K2 Unlimited, Inc.*,
15 F. Supp. 3d 158 (D. Mass. 2014) .......... 7

*United Techs. Corp., Hamilton Standard. Div. v. Dean*,
906 F. Supp. 27 (D. Mass. 1995) .......... 7

**Statutes**

18 U.S.C. § 371 .......... 2, 3

18 U.S.C. § 1591 .......... 3

18 U.S.C. § 1595(b)(1) .......... *passim*

18 U.S.C. § 1952(a)(3)(A) .......... 2

18 U.S.C. § 1956 ... 2

18 U.S.C. § 1957 ... 3

Mass. Gen. Laws ch. 93A, § 2 ... 3

**Other Authorities**

Fed. R. Civ. P. 1 ... 10

H.R. Rep. 108-264(II) ... 4

## INTRODUCTION

Plaintiffs Jane Doe No. 1, Jane Doe No. 2, and Jane Doe No. 3 (collectively, "Plaintiffs") respectfully request that this Court grant in part and deny in part Defendants Michael Lacey and James Larkin's Motion to Stay Proceedings, ECF No. 86 (the "Motion to Stay" or "Motion").

Although Plaintiffs oppose Defendants Lacey and Larkin's request for a blanket stay of all proceedings in this matter, Plaintiffs are obliged to bring to the Court's attention Section 1595(b) of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(b). The statute provides for a stay of proceedings against Defendants Lacey and Larkin because of the pendency of criminal charges against them, but the statute does not require a blanket stay of this entire matter. In fact, the balance of the equities strongly favors allowing Plaintiffs to proceed with discovery on their claims against Defendants Backpage.com, LLC ("Backpage") and Carl Ferrer, who have pleaded guilty in the criminal case. Neither the government nor Defendants Backpage or Ferrer[1] have taken a position on the Motion to Stay.

Plaintiffs previously have raised concerns regarding the efficient and timely resolution of this matter. For the reasons set forth more fully below, a significant delay in developing the factual record in this case, principally involving Defendant Backpage, would substantially prejudice Plaintiffs' interests in an efficient and just disposition of their claims, while the risk of prejudice to Defendants Lacey and Larkin from discovery against the company and its CEO would be minimal. Plaintiffs thus respectfully request that this Court allow Plaintiffs to proceed against Defendants Backpage and Ferrer, while staying this matter with respect to Defendants Lacey and Larkin until a final adjudication against them in the criminal case.

[1] Defendants Backpage and Ferrer have defaulted on their deadline to answer or otherwise respond to Plaintiffs' First Amended Complaint, and Plaintiffs have requested entry of default against them. *See* ECF No. 78.

## ARGUMENT

In the First Circuit, it is generally within the court's discretion to decide whether to grant a stay of civil proceedings where there are simultaneous criminal proceedings against the civil defendant. *See Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004). With respect to civil claims under the TVPRA, however, Congress has provided for a stay of such claims "during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." 18 U.S.C. § 1595(b)(1). While Section 1595(b) may justify a stay of Plaintiffs' claims against Defendants Lacey and Larkin, it would not be appropriate to enter a stay as to the entire action. This matter presents an unusual and complex application of the TVPRA's stay provision, as there are multiple defendants, determinations of liability are at different stages, and—as described in further detail herein—documents belonging to some defendants are in the sole possession of other defendants' counsel. Because Defendants Backpage and Ferrer have pled guilty in the criminal proceeding, Plaintiffs can proceed with discovery as to these parties without interfering with the criminal proceedings against Defendants Lacey and Larkin. This approach aligns the balance of the equities in this case, which favor Plaintiffs, while allowing the government to prosecute perpetrators without interference.

### I. A Stay Against Defendants Backpage and Ferrer Is Not Required Under Section 1595(b) of the TVPRA.

As the Court is aware, on April 9, 2018, a federal indictment against Defendants Lacey and Larkin, among others, was unsealed in the U.S. District Court for the District of Arizona.

See ECF No. 86-1, Appendix A.[2] At the same time, Defendants Backpage and Ferrer pled guilty to federal charges.[3] On April 12, 2018, Plaintiffs filed the First Amended Complaint ("FAC") in this matter, bringing claims under the TVPRA, 18 U.S.C. §§ 1591, 1595, and Massachusetts' consumer protection statute, Mass. Gen. Laws ch. 93A, § 2. ECF No. 64.[4] Both the criminal charges and Plaintiffs' claims involve allegations regarding Defendants' operation of the website Backpage.com in a manner that knowingly concealed illegal sex trafficking, including the trafficking of children.

Section 1595(b) of the TVPRA states: "Any civil action filed under [this section] shall be stayed during the pendency of any criminal action arising out of the same occurrence in which

---

[2] Defendants Lacey and Larkin were charged with violations of the Travel Act (facilitating prostitution), 18 U.S.C. § 1952(a)(3)(A); federal money laundering statutes, 18 U.S.C. §§ 1956-1957; and conspiracy, 18 U.S.C. § 371. ECF No. 86-1, Appendix A.

[3] Defendant Ferrer pled guilty to one count of conspiracy under 18 U.S.C. § 371; his plea agreement included admissions to the factual bases of the Travel Act, money laundering, and conspiracy offenses, as well as commitments to immediately shut down the Backpage.com website and assist with the forfeiture of Backpage-related assets. ECF No. 86-1, Appendix B. Defendant Backpage pled guilty to one count of money laundering conspiracy under 18 U.S.C. § 1956(h). ECF No. 86-1, Appendix C.

[4] By way of background concerning this case's current procedural posture, in the weeks following Plaintiffs' filing of the FAC, Davis Wright Tremaine LLP ("DWT")—then counsel for all four Defendants—repeatedly failed to respond to Plaintiffs' attempts to meet and confer regarding the then-upcoming scheduling conference. Meanwhile, Defendant Ferrer's criminal counsel filed a letter with the Court advising that DWT had noticed its intent to withdraw from representing Defendants Ferrer and Backpage, and that Defendant Ferrer objected to DWT's continuing representation of Defendants Lacey and Larkin. *See* ECF No. 65. On May 1, 2018, DWT moved for an extension of time to answer or otherwise respond to the FAC and to continue the scheduling conference. ECF No. 67. Plaintiffs opposed the motion to continue the scheduling conference, pointing out that they were entitled to reasonable assurance that Defendants' internal maneuverings would not compromise the efficient resolution of this matter. ECF No. 68, at 2. On May 4, 2018, DWT filed a motion to withdraw as counsel for Defendants Ferrer and Backpage. ECF No. 71. This Court held conferences on May 7, 2018, and May 15, 2018, at which the Court addressed the motion to withdraw and related issues. Ultimately, after reviewing an *in camera* submission, the Court allowed DWT to withdraw as counsel for Defendants Backpage and Ferrer while remaining as counsel for Defendants Lacey and Larkin, subject to certain certifications. *See* ECF No. 81

the claimant is the victim." 18 U.S.C. § 1595(b)(1). This section further provides that "a 'criminal action' includes investigation and prosecution and is pending until final adjudication in the trial court." *Id.* § 1595(b)(2). In a recent case construing this provision, the court emphasized that the TVPRA "was not created to protect civil defendants[, n]or . . . in providing for a private right of action and mandatory stay, in order to protect the rights of civil defendants." *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 4:10-CV-04124, 2011 WL 5188424, at *2 (W.D. Ark. Oct. 31, 2011). "Rather, based on the legislative history, and the very name of the Act, the purpose of the Trafficking Victims Protection Act, as amended by the TVPRA, was to protect the victims of trafficking and strengthen the government's ability to prosecute perpetrators." *Id.*

The purpose of the stay provision, therefore, is to protect the government from potential interference from civil discovery. *See id.*; H.R. Rep. 108-264(II). Where a criminal defendant has already pled guilty and agreed to cooperate with the government, as Defendants Ferrer and Backpage have here, and where the government itself has not invoked the stay provision (as it has in other cases[5]), that concern is obviated. Further, as described in more detail below, the equities weigh strongly in favor of allowing Plaintiffs to proceed with discovery against Defendants Backpage and Ferrer.

Plaintiffs thus submit that although Section 1595(b) provides for a partial stay with respect to Defendants Lacey and Larkin, Plaintiffs should be allowed to continue with discovery in their case against Defendants Backpage and Ferrer.

---

[5] Indeed, it is frequently the government who seeks a stay under Section 1595(b), but that has not occurred here. *See, e.g.*, *Ara v. Khan*, No. CV 07-1251 (ARR)(JO), 2007 WL 1726456 (E.D.N.Y. June 14, 2007).

## II. The Balance of the Equities Favors Allowing Plaintiffs to Proceed Against Defendants Backpage and Ferrer.

Setting aside the stay provision of the TVPRA—which Defendants did not raise in their Motion to Stay—Plaintiffs submit that the First Circuit's balance of the equities test favors allowing Plaintiffs to proceed against Defendants Backpage and Ferrer.

In the First Circuit, where there are simultaneous criminal proceedings against a civil defendant, it is within the court's discretion to decide whether to grant a stay of the civil proceedings. *See Microfinancial, Inc.*, 385 F.3d at 78. The party moving for a stay "carr[ies] a heavy burden." *Id.* at 77; *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983) (a party "must demonstrate a clear case of hardship if there is a danger that the stay will damage the other party" (citing *Landis v. N. Am. Corp.*, 299 U.S. 248, 255 (1936))). Furthermore, a stay of *all* civil proceedings is generally disfavored. *See Green v. Cosby*, 177 F. Supp. 3d 673, 678 (D. Mass. 2016) ("[A] general stay of all civil discovery is not by any means the best option available to the court or to the litigants." (quoting Hon. Milton Pollack, *Parallel Civil & Criminal Proceedings*, 129 F.R.D. 201, 211 (1989) [hereinafter "Pollack"])). As a result, courts should tailor any stay to avoid undue prejudice. *Id.* at 678–79 ("By limiting both the time and subject matter covered in temporary deferrals of particular discovery, a Court can allow civil proceedings to progress as much as possible without prejudicing the relative interests of the litigants." (quoting Pollack at 211)); *see Dig. Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8, 12 (D. Mass. 1991) ("[C]ourt[s] may, in lieu of a general stay, impose protective orders, seal interrogatories, impose a stay for a finite period of time, or limit a stay to a particular subject matter." (citation omitted)).

While the decision on a motion to stay is fact-specific, there are seven factors that typically bear on the court's analysis. Those factors are: (i) the plaintiff's interests in proceeding

expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff because of a delay; (ii) the hardship to the defendant, including any burden should the cases proceed in tandem; (iii) the convenience of the courts; (iv) the interests of any third parties; (v) the interest of the public; (vi) the good faith (or lack thereof) of the litigants; and (vii) the status of the cases. *See Microfinancial, Inc.*, 385 F.3d at 78. Factual parallels between civil and criminal proceedings do not automatically justify a stay in the civil case, although courts may consider the degree to which issues in the civil litigation intersect with those in the criminal proceeding. *See Green*, 177 F. Supp. 3d. at 678 (citing Pollack at 203); *see, e.g., Dig. Equip. Corp.*, 142 F.R.D. at 16 (denying stay and directing parties to instead file joint protective order).

**A. A Stay Would Prejudice Plaintiffs' Interests.**

Plaintiffs have a strong interest in proceeding expeditiously with this matter. *See Dig. Equip. Corp.*, 142 F.R.D. at 12 (emphasizing that plaintiffs are "entitled to a speedy discovery process"). If this Court were to stay all proceedings, Plaintiffs would have to wait "for an undefined but potentially lengthy period before receiving the money to which [they] may be entitled." *Austin*, 705 F.2d at 5 (describing the damage and "financial hardship [to the plaintiff] of being forced to wait"). Defendants Lacey and Larkin's cavalier reference to money damages for Plaintiffs as "not a time-sensitive matter," Mot. at 8, displays a continued lack of understanding of the physical and emotional trauma that Defendants inflicted on Plaintiffs. Plaintiffs struggle to achieve the success and stability they would have attained but for being sold for sex with Defendants' active involvement. For example, Plaintiffs' abilities to build the relationships and support networks that form the foundation of thriving adults have been hindered by the physical and emotional trauma caused by repeated rape. Jane Does No. 1 and 3 also have not been able to participate in standard educational programs, resulting in a loss of job opportunities and the ability to provide for themselves and their families. Plaintiffs are also

unable to take advantage of housing and employment opportunities in neighborhoods in which they could afford to live and find stable work due to the constant fear that they will once again be raped. In sum, Plaintiffs suffer each day that they do not receive just compensation from Defendants. Further delay in Plaintiffs' ability to pursue their claims against Defendants Backpage and Ferrer would only compound the damage.

Furthermore, courts have recognized that "witnesses and documents need to be gathered quickly before memories fade or become stale, witnesses become unavailable, records are purged, and documents disappear." *United Techs. Corp., Hamilton Standard. Div. v. Dean*, 906 F. Supp. 27, 28 (D. Mass. 1995); *see S.E.C. v. K2 Unlimited, Inc.*, 15 F. Supp. 3d 158, 160 (D. Mass. 2014) (explaining that staying discovery would create "the risk of losing evidence through the death of witnesses or fading memories"). Defendants' history of delay tactics in this case highlights the significant risk to Plaintiffs' interests.[6] Since Plaintiffs filed the FAC, Defendants and their counsel have engaged in serial delay, and now seek to grind this case to a halt altogether, including by preventing discovery against parties that DWT no longer represents. *See Microfinancial, Inc.*, 385 F.3d at 79 ("To cinch matters, the foot-dragging that already had occurred gave the court good reason for skepticism about the requested stay.").

**B. Defendants Lacey and Larkin Will Not Suffer Hardship from Discovery Against Defendants Backpage and Ferrer.**

If discovery were to proceed against Defendants Backpage and Ferrer, Defendants Lacey and Larkin would not suffer any harm. Defendants Lacey and Larkin's concerns regarding their Fifth Amendment rights against self-incrimination would be addressed by a stay of Plaintiffs'

[6] For example, Defendants vigorously contested the plausibility of Plaintiffs' allegations in their motion to dismiss arguments, yet facts that have come to light since then—including through the federal felony plea agreements of Defendants Backpage and Ferrer—confirm that Plaintiffs' allegations are all too plausible.

claims against them. But Backpage, as a corporation, cannot claim a Fifth Amendment privilege. *See Amato v. United States*, 450 F.3d 46, 49 (1st Cir. 2006).[7] Here, Plaintiffs have a strong interest in seeking documents that belong to Backpage—which are in the possession of its former counsel, DWT. On information and belief, following the seizure of Backpage's computer systems by the government in connection with the indictments and guilty pleas, DWT is in sole possession of the only available copies of all of Backpage's documents.[8] DWT did not inform Plaintiffs or the Court of this fact, even though it sheds light on DWT's motives in seeking a stay of discovery against Backpage. Plaintiffs are entitled to discovery of these documents to pursue their damages claims against Defendants Backpage and Ferrer. Such discovery would not implicate Defendants Lacey and Larkin's stated concerns regarding their Fifth Amendment privileges.

### C. The Status of the Cases Favors Proceeding with This Matter.

The status of both the criminal proceeding and the current case strongly suggest that this Court should not grant a stay of all proceedings. Defendants Backpage and Ferrer have already pled guilty to the criminal charges. Meanwhile, the case against Defendants Lacey and Larkin is

[7] Defendant Ferrer has not submitted any Fifth Amendment argument here, so any consideration of his potential privileges would be entirely speculative. In any event, Defendant Ferrer has already pleaded guilty to the existing criminal charges against him. At least one court has denied a motion to stay where a defendant who pleaded guilty in the criminal case sought to stay the civil matter and the government did not intervene. *See Arden Way Assoc. v. Boesky,* 600 F. Supp. 1494, 1500 (S.D.N.Y. 1987).

[8] *See* Limited Obj. to Pls.' Proposed Form of Sanctions Order, at 2:19-3:1, *R.O. & K.M. v. Medalist Holdings, Inc.*, No. 17-2-04897-1 (Wash. Super. Ct. Pierce Cnty. June 26, 2018), ECF No. 96 ("As part of their agreement to cooperate in the federal and state criminal cases, since at least April 24, 2018, the Backpage Defendants (both directly and through counsel) have requested that withdrawing counsel Davis Wright Tremaine LLP . . . 'immediately return all hard disks, files, and other property' to the Backpage Defendants. These pleas have not been successful to date. As shown below, and in Exhibit 6 attached hereto, the Backpage Defendants again re-urge their former counsel to comply with the Court's impending orders . . .").

in its early stages, with a jury trial currently set for January 15, 2020—a year and a half from now, assuming the trial takes place as scheduled. Events in the criminal proceeding suggest that that date will not hold. For example, after nearly four months, Defendants Lacey and Larkin still do not know who will represent them in the criminal case. Defendants Lacey and Larkin currently are engaged in a drawn-out dispute with the government regarding whether DWT should be disqualified due to their prior representation of Ferrer and Backpage, an indication that trial may be delayed if Lacey and Larkin ultimately must seek new counsel. *See* United States' Mot. to Disqualify Counsel, *United States v. Lacey*, CR-18-00422-PHY-SPL (BSB) (D. Ariz. Apr. 25, 2018), ECF No. 118; Opp'n to United States' Mot. to Disqualify Counsel, *United States v. Lacey*, CR-18-00422-PHY-SPL (BSB) (D. Ariz. June 6, 2018), ECF No. 180.

As a result, by requesting a stay of the entire civil case through the entire criminal proceeding, Defendants Lacey and Larkin are in effect requesting an indefinite stay of this case, even as to Defendants Backpage and Ferrer, whose criminal liability is not at issue in the criminal trial. If the Motion to Stay were granted, Plaintiffs would likely need to wait several years before recommencing even an *investigation* of their claims. As detailed above, Plaintiffs' injuries are only compounding during this time, and there is significant risk of the loss of evidence in the interim. This factor weights strongly against Defendants Lacey and Larkin's request. *See Austin*, 705 F.2d at 5 (proceeding in the civil case where plaintiff would have to wait for an extended period before obtaining potential relief).

### D. Defendants' Lack of Good Faith and the Interests of the Courts, Third Parties, and the Public Favor Proceeding.

The remaining factors in the First Circuit's analysis also weigh in favor of proceeding in this case against Defendants Backpage and Ferrer. As mentioned above, Defendants Lacey and Larkin have engaged in continued foot-dragging, demonstrating their purpose to delay Plaintiffs'

claims by any means possible. Defendants also have failed to inform the Court that DWT is in sole possession of all of Backpage's documents, despite multiple rounds of argument and submissions regarding DWT's plan to cease representing Defendant Backpage while continuing to represent Defendants Lacey and Larkin.

It is also in the interest of this Court to allow Plaintiffs to proceed with discovery against Defendants Backpage and Ferrer. Courts have an interest in moving cases along, especially where the case has been pending, defendants have been "foot-dragging," and defendants are—in effect—asking for an indefinite stay. *See Microfinancial, Inc.*, 385 F.3d at 79. Defendants Lacey and Larkin disingenuously argue that there is no prejudice to this Court in waiting longer, because a scheduling order is not yet in place and "dispositive motions can still be filed." Mot. at 10, 12. Of course, it was Defendants Lacey and Larkin who moved to delay a scheduling conference in this matter, and recently they answered the FAC rather than filing any dispositive motions. The Motion to Stay then reveals the true reason for Defendants Lacey and Larkin's assertion of "convenience": they do not want to "expend efforts or resources" while the criminal case is pending. Mot. at 10–11. While saving costs for defendants is no reason to issue a stay,[9] this argument is mooted in any event by Plaintiffs' concession that Section 1595(b) applies to their claims against Defendants Lacey and Larkin. No costs will be imposed on Defendants Lacey and Larkin by allowing Plaintiffs to proceed against Defendants Backpage and Ferrer.

The public similarly has an interest in the prompt resolution of civil cases. *See* Fed. R. Civ. P. 1; *see also Microfinancial, Inc.*, 385 F.3d at 79 n.4; *Dig. Equip. Corp.*, 142 F.R.D. at 14

[9] *See Boston Heart Diagnostics Corp. v. Health Diagnostics Lab., Inc.*, Civ. No. 13-13111-FDS, 2014 WL 2048436, at *3 (D. Mass. May 16, 2014) (citing *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, Civ. No. 3:09cv791, 2010 WL 1946262, at *4 (E.D. Va. May 10, 2010) ("The mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay.")).

(explaining that the public "has an interest in both the prompt resolution of civil cases as well as the fair prosecution of criminal cases"). And third parties "may have a legitimate interest in providing truthful evidence as to relevant issues in this case, and forcing them to wait indefinitely on the sidelines is not justifiable." *Green*, 177 F. Supp. 3d at 681–82.

**E. The Relevant Criminal Proceeding Involves Different Claims.**

Finally, Defendants Lacey and Larkin's concerns regarding similarities between the criminal and civil cases are beside the point, given Plaintiffs' acknowledgement that their claims against Defendants Lacey and Larkin should be stayed. To briefly address this issue, Plaintiffs note that completion of the criminal proceeding would not necessarily resolve a number of the issues in this case—for example, plaintiffs' claims under Chapter 93A will likely require the development of additional facts that may not be relevant to the federal charges of facilitation of prostitution, money laundering, and conspiracy. Plaintiffs must have the opportunity to develop facts that are specific to their claims against Defendants Backpage and Ferrer. *See Green*, 177 F. Supp. 3d at 681 ("Were this court to pause the litigation in its entirety while Defendant's criminal case wends its way through the . . . courts, the parties would face a substantial amount of discovery they would need to conduct after the criminal case concludes in order to be ready for trial in this action.").

**CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that this Court stay Plaintiffs' claims against Defendants Lacey and Larkin pursuant to 18 U.S.C. § 1595(b) until the criminal case against them is no longer pending, and deny the Motion as to claims against Defendants Backpage and Ferrer.

JANE DOE NO. 1, JANE DOE NO. 2,
and JANE DOE NO. 3

Respectfully submitted,

/s/ John T. Montgomery__________
John T. Montgomery (BBO #352220)
Aaron M. Katz (BBO #662457)
Jessica L. Soto (BBO #683145)
Rebecca C. Ellis (BBO #685729)
Matthew D. LaBrie (BBO #693698)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
T: (617) 951-7000
Email: john.montgomery@ropesgray.com
aaron.katz@ropesgray.com
jessica.soto@ropesgray.com
rebecca.ellis@ropesgray.com
matthew.labrie@ropesgray.com

Jolene L. Wang (*pro hac vice*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
T: (212) 596-9000
Email: jolene.wang@ropesgray.com

Dated: August 3, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of August, 2018, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ John T. Montgomery

Dated: August 3, 2018

John T. Montgomery